FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 27, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHERYL B.,[1] | No. 2:23-cv-00090-MKD |
| Plaintiff, | ORDER AFFIRMING THE COMMISSIONER'S DECISION |
| v. | |
| MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[2] | **ECF Nos. 8, 12** |
| Defendant. | |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned

identifies them by only their first names and the initial of their last names. *See*

LCivR 5.2(c).

[2] Martin O'Malley became the Commissioner of Social Security on December 20,

2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin

O'Malley is substituted for Kililo Kijakazi as the defendant in this suit. No further

action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' briefs.[3]  ECF Nos. 8, 12.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court affirms the Commissioner's decision.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a

_____

[3] Plaintiff's opening brief is labeled a Motion for Summary Judgment.  ECF No. 8.  However, the supplemental rules for Social Security actions under 42 U.S.C. § 405(g) went into effect on December 1, 2022; Rule 5 and Rule 6 state the actions are presented as briefs rather than motions.  Fed. R. Civ. P. Supp. Soc. Sec. R. 5, 6.

ORDER - 2

reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

ORDER - 3

months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

1382c(a)(3)(B).

    The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled.  20

C.F.R. § 416.920(b).

    If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled.  *Id.*

ORDER - 4

1    At step three, the Commissioner compares the claimant's impairment to

2    severe impairments recognized by the Commissioner to be so severe as to preclude

3    a person from engaging in substantial gainful activity. 20 C.F.R. §

4    416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the

5    enumerated impairments, the Commissioner must find the claimant disabled and

6    award benefits. 20 C.F.R. § 416.920(d).

7    If the severity of the claimant's impairment does not meet or exceed the

8    severity of the enumerated impairments, the Commissioner must pause to assess

9    the claimant's "residual functional capacity." Residual functional capacity (RFC),

10    defined generally as the claimant's ability to perform physical and mental work

11    activities on a sustained basis despite his or her limitations, 20 C.F.R. §

12    416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

13    At step four, the Commissioner considers whether, in view of the claimant's

14    RFC, the claimant is capable of performing work that he or she has performed in

15    the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is

16    capable of performing past relevant work, the Commissioner must find that the

17    claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of

18    performing such work, the analysis proceeds to step five.

19    At step five, the Commissioner considers whether, in view of the claimant's

20    RFC, the claimant is capable of performing other work in the national economy.

ORDER - 5

20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §

416.920(g)(1).  If the claimant is not capable of adjusting to other work, the

analysis concludes with a finding that the claimant is disabled and is therefore

entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

### DISABLED WIDOW'S BENEFITS

To be entitled to disabled widow's benefits, a claimant must establish,

among other things, that she is at least 50 years of age, unmarried unless an

exception set forth in 20 C.F.R. § 404.335(e) applies, and a widow of a wage

earner who died fully insured.  She must be found disabled no later than seven

years after the spouse's death.  *See* § 404.335(c).  She must establish that she has

physical or mental impairments that result in disability as defined in 42 C.F.R. §

ORDER - 6

404.1505.  *Id*.  The definition of disability for disabled widow's benefits is the same as for the standard disability case and the five-step sequential evaluation process is applicable to disabled widow's benefits cases.  *See* 20 C.F.R. § 404.1505(a) and § 404.1520(a)(4)(i)–(v).

## ALJ'S FINDINGS

On August 10, 2018 Plaintiff applied for Title XVI supplemental security income benefits and Title II disabled widow's benefits alleging a disability onset date of April 15, 2018.  Tr. 20, 95, 196-210.  Plaintiff's prescribed period ended on January 31, 2019.  Tr. 705.  The application was denied initially, and on reconsideration. Tr. 120-23, 129-34.  Plaintiff appeared before an administrative law judge (ALJ) on October 31, 2019.  Tr. 38-83.  On November 22, 2019, the ALJ denied Plaintiff's claim.  Tr. 17-35.  Plaintiff appealed the denial, resulting in a remand from this Court.  Tr. 832-34.  Plaintiff appeared for a remand hearing on December 8, 2022.  Tr. 773-99.  On February 1, 2023, the ALJ issued a partially favorable decision, finding Plaintiff became disabled on February 26, 2022, but was not disabled prior to that date.  Tr. 702-21.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 15, 2018.  Tr. 705.  At step two, the ALJ found that Plaintiff had the following severe impairments since the alleged onset date: psychotic disorder, posttraumatic stress disorder, and major

ORDER - 7

depressive disorder. *Id.* The ALJ found that beginning on the established onset date of disability, February 26, 2022, Plaintiff had the following severe impairments: psychotic disorder; posttraumatic stress disorder; major depressive disorder; displaced fracture of the tibia/fibula of the left leg, status post open reduction internal fixation (ORIF); and acute encephalopathy. *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 706. The ALJ then concluded that prior to the established onset date of February 26, 2022, Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following limitations:

> [Plaintiff[ was able to understand, remember, and carry out simple, routine tasks and semi-skilled tasks and able to maintain concentration, persistence, and pace for 2-hour intervals between regularly scheduled breaks throughout an 8-hour workday. She could work in a predictable environment with seldom changes and in a single work location. She could do no work at a fast-paced production rate of pace. She could have no interaction with the public and could work with few or a small group of coworkers.

Tr. 707.

The ALJ found that beginning on February 26, 2022, Plaintiff had the RFC to perform light work with the following additional limitations:

> [Plaintiff] is limited to standing/walking 2 hours total in an 8-hour workday. [Plaintiff] requires the ability to alternate between sitting and standing to accommodate the 2-hour maximum standing/walking requirement. [Plaintiff] is able to understand, remember, and carry out simple, routine tasks and semi-skilled tasks. [Plaintiff] is able to

ORDER - 8

maintain concentration, persistence, and pace for 2-hour intervals between regularly scheduled breaks throughout an 8-hour workday. She can work in a predictable environment with seldom changes and in a single work location. She can do no work at a fast-paced production rate of work. She can have no interaction with the public and can work with few or a small group of coworkers.

Tr. 715-16.

At step four, the ALJ found Plaintiff is unable to perform any of her past relevant work. Tr. 718. At step five, the ALJ found that prior to the established onset date, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as floor waxer, wall cleaner, and hand packager. Tr. 720. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through February 25, 2022. *Id.* The ALJ found that Plaintiff became disabled on February 26, 2022. *Id.*

Per 20 C.F.R. § 416.1484, the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI and disabled widow's benefits under Title II of the Social Security Act.

ORDER - 9

Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ conducted a proper step-three analysis;

3. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

4. Whether the ALJ conducted a proper step-five analysis.

ECF No. 8 at 5.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ erred in her consideration of the opinions of Michael Lace, Psy.D.; Kayleen Islam-Zwart, Ph.D.; John Arnold, Ph.D.; and Paul Daily, LMHC, MHP.  ECF No. 8 at 7-18.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative

ORDER - 10

medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a)-(b),

416.920c(a)-(b).  The factors for evaluating the persuasiveness of medical opinions

and prior administrative medical findings include supportability, consistency,

relationship with the claimant (including length of the treatment, frequency of

examinations, purpose of the treatment, extent of the treatment, and the existence

of an examination), specialization, and "other factors that tend to support or

contradict a medical opinion or prior administrative medical finding" (including,

but not limited to, "evidence showing a medical source has familiarity with the

other evidence in the claim or an understanding of our disability program's policies

and evidentiary requirements").  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-

(5).

Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in

the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence
> and supporting explanations presented by a medical source are to
> support his or her medical opinion(s) or prior administrative
> medical finding(s), the more persuasive the medical opinions or
> prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior
> administrative medical finding(s) is with the evidence from other
> medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies.  *Id*.  The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records.  *Id.* at 792.

ORDER - 12

However, the ALJ is not required to make specific findings regarding the relationship factors. *Id.* Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id.*

### 1. Dr. Lace

Dr. Lace, a psychological expert, testified at the 2019 hearing and rendered an opinion on Plaintiff's functioning. Tr. 42-46. Dr. Lace testified Plaintiff had been diagnosed with a provisional diagnosis of psychotic disorder; PTSD; major depressive disorder, recurrent; an eating disorder; history of severe opioid dependence; severe cannabis use disorder; and other substance abuse, severe. Tr. 43. Dr. Lace opined Plaintiff had only mild to moderate limitations in the B criteria with substance use. Tr. 45-46. He further opined Plaintiff could perform simple, routine tasks, and semi-skilled or more complex tasks; she could maintain concentration, persistence, and pace during a workday; she should not engage in fast-paced production work; she would function best in a situation with few, if any changes in the nature of the tasks and the location where they are performed, and a single work location would be best. Tr. 46. Dr. Lace was not asked about the C Criteria of the listings. The ALJ found Dr. Lace's opinion was persuasive.

Plaintiff contends the ALJ erred in relying on Dr. Lace's opinion. ECF No. 8 at 7-9. First, Plaintiff contends Dr. Lace erroneously defined marked limitations.

1   *Id.* at 7-8.  However, Plaintiff appears to misinterpret Dr. Lace's testimony.

2   Plaintiff contends Dr. Lace testified marked limitations must be documented by

3   police contact, domestic violence charges, or consistent hospitalizations.  *Id.*  Dr.

4   Lace did not state a marked limitation in interacting with others required any such

5   documentation; rather, he testified a marked limitation would be one that is

6   "ongoing, documented, longitudinal challenges with . . . others."  Tr. 49.  He

7   stated, "perhaps some police contact, perhaps you know domestic violence

8   charges, something like that . . . largely, it would be a consistently over time that

9   there is significant challenges in that record."  *Id.*  He testified a marked limitation

10  in adapting and managing oneself would require documentation "there was a

11  reaction to stress that was, that put her, perhaps, in the hospital.  Or there was

12  consistent hospitalizations.  Or at least several of those in a fairly short period of

13  time."  *Id.*  Dr. Lace did not state police contact or hospitalizations were required

14  for a finding of marked limitations, but rather offered them as examples of marked

15  limitations.  Further, Plaintiff does not demonstrate how any reliance on Dr. Lace's

16  testimony was harmful as Plaintiff does not demonstrate she has marked

17  limitations or meets the C Criteria of a listing.

18      Next, Plaintiff contends the ALJ erred in relying on Dr. Lace's opinion

19  because Dr. Lace failed to adequately review the medical records at Exhibit 14F.

20  ECF No. 8 at 8.  Dr. Lace confirmed at the hearing that he reviewed the records

ORDER - 14

contained in Exhibit 14F.  Tr. 47.  While Plaintiff offers an alternative

interpretation of the evidence, the Court may not reverse the ALJ's decision based

on Plaintiff's disagreement with the ALJ's interpretation of the record.  *See*

*Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[W]hen the evidence

is susceptible to more than one rational interpretation" the court will not reverse

the ALJ's decision).  Plaintiff also contends the ALJ ignored the prior remand

Order and failed to reevaluate Dr. Lace's opinion and the updated record.  ECF No.

8 at 9.  However, the ALJ's 2019 and 2022 analyses contain multiple differences,

indicating the ALJ reconsidered the opinion, and the ALJ considered and cited to

the updated evidence.  Tr. 27, 713.  Plaintiff has not demonstrated the ALJ erred in

relying on Dr. Lace's opinion.

### 2.  Dr. Islam-Zwart

On May 22, 2018, Dr. Islam-Zwart conducted a psychological examination

and rendered an opinion on Plaintiff's functioning.  Tr. 303-11.  Dr. Islam-Zwart

diagnosed Plaintiff with a provisional diagnosis of unspecified psychotic disorder;

sedative, hypnotic, and anxiolytic use disorder, severe, in early remission; PTSD;

alcohol use disorder, severe, in remission; unspecified depressive disorder; and

unspecified eating disorder.  Tr. 304.  She opined Plaintiff has no or mild limitation

in her ability to understand, remember, and persist in tasks by following very short

and simple instructions; moderate limitations in her ability to understand,

ORDER - 15

1   remember, and persist in tasks by following detailed instructions, learn new tasks,

2   perform routine tasks without special supervision, make simple work-related

3   decisions, be aware of normal hazards and take appropriate precautions, ask simple

4   questions or request assistance, and set realistic goals and plan independently;

5   marked limitations in her ability to perform activities within a schedule, maintain

6   regular attendance, and be punctual within customary tolerances without special

7   supervision, adapt to changes in a routine work setting, and maintain appropriate

8   behavior in a work setting; and severe limitations in her ability to communicate

9   and perform effectively in a work setting and complete a normal

10  workday/workweek without interruptions from psychologically-based symptoms.

11  Tr. 304.  She opined Plaintiff overall has a moderate severity rating, and she stated

12  Plaintiff's past substance use could have contributed to her current symptoms but

13  is not the cause of their persistence; the limitations would persist following 60 days

14  of sobriety; and the duration of the limitations was "12 to indefinite months."  Tr.

15  304-05.  The ALJ found Dr. Islam-Zwart's opinion was unpersuasive.  Tr. 713.

16          First, the ALJ found the opinion was not supported by Dr. Islam-Zwart's

17  examination.  *Id.*  Supportability is one of the most important factors an ALJ must

18  consider when determining how persuasive a medical opinion is.  20 C.F.R. §§

19  404.1520c(b)(2), 416.920c(b)(2).  The more relevant objective evidence and

20  supporting explanations that support a medical opinion, the more persuasive the

ORDER - 16

medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The ALJ found

Dr. Islam-Zwart noted Plaintiff was able to respond to interview questions as

necessary, there was no real indication of cognitive difficulty on examination, and

her mini-mental status examination score was 27 out of 30, which was indicative

of no impairment.  Tr. 713.  Plaintiff's examination documented normal attention,

concentration, focus, and memory.  *Id.*  Plaintiff contends the opinion was

consistent with the examination because Plaintiff was talkative and circumstantial,

she described a history of traumatic experiences and criminal involvement, and Dr.

Islam-Zwart documented deficits in thought process/content, a question of

delusional thought processes, impaired short-term memory, and abnormal

concentration, abstract thought, and insight and judgment.  ECF No. 8 at 9-10.

While Plaintiff offers an alternative interpretation of the examination, the ALJ

reasonably found the opinion was inconsistent with the examination.  Dr. Islam-

Zwart noted Plaintiff had normal orientation, eye contact, affect, and grooming;

she was personable, and she had normal Trail Making Test results.  Tr. 310.  Her

thinking was only "somewhat concrete," and despite Plaintiff having "some

problems with focus," she was able to complete serial 7s, spell "world" forward

and backward, write a sentence, copy shapes, and follow a simple command.  Tr.

310-11.  This was a supported reason to reject Dr. Islam-Zwart's opinion.

ORDER - 17

1    Second, the ALJ found Dr. Islam-Zwart's opinion was inconsistent with the

2    medical records.  Tr. 714.  Consistency is one of the most important factors an ALJ

3    must consider when determining how persuasive a medical opinion is.  20 C.F.R.

4    §§ 404.1520c(b)(2), 416.920c(b)(2).  The more consistent an opinion is with the

5    evidence from other sources, the more persuasive the opinion is.  20 C.F.R. §§

6    404.1520c(c)(2), 416.920c(c)(2).  The ALJ noted Dr. Islam-Zwart's opinion was

7    inconsistent with records that documented Plaintiff generally being alert and

8    oriented, with normal memory, mentation, behavior, thoughts, attention, insight,

9    and judgment.  Tr. 714 (citing, e.g., Tr. 320, 326, 335, 1181, 1236).  Plaintiff

10    contends the opinion was consistent with the overall record, because despite

11    waxing and waning of symptoms, she overall consistently had significant

12    symptoms, including anxiety, panic attacks, irritability, depression, impaired sleep,

13    appetite, self-esteem, and mood.  ECF No. 8 at 11.  However, Plaintiff cites largely

14    to her self-reported symptoms.  *Id.* at 11-15. Plaintiff also cites to some objective

15    evidence of Plaintiff's impaired insight, communication, and mood.  *Id.* at 12-13

16    (citing Tr. 529, 531, 551, 562, 567, 573, 579, 598).  Plaintiff reported anxiety at

17    multiple appointments and was documented as having difficulties interacting with

18    others.  ECF No. 8 at 13-14 (citing, e.g., Tr. 642, 648, 667).  Most of the cited

19    records lack any mental status testing; Plaintiff cites to a single mental status

20    examination to support her content.  ECF No. 8 at 14 (citing Tr. 483-84).  Even at

ORDER - 18

an appointment where Plaintiff reported feeling "hyper and manic" and "crazy," she had normal grooming, orientation, motor movement, speech, eye contact, and thoughts.  *See* Tr. 317.  While Plaintiff again offers an alternative interpretation of the evidence, the ALJ's finding is reasonable and supported by substantial evidence.

Lastly, the ALJ found a portion of the opinion addressed an issue reserved to the Commissioner.  Tr. 714.  For claims filed on or after March 27, 2017, the ALJ is not required to provide any written analysis about how they consider issues reserved to the Commissioner.  20 CFR §§ 404.1520b(c), 416.920b(c).  Plaintiff does not challenge this reason, thus any challenge is waived.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).  Further, the ALJ's consideration of the issue is supported by the regulations and therefore was not erroneous.

### 3.  Dr. Arnold

On September 9, 2020, Dr. Arnold, a consultative examiner, conducted a psychological examination and rendered an opinion on Plaintiff's functioning.  Tr. 1133-38.  Dr. Arnold diagnosed Plaintiff with major depressive disorder, recurrent, moderate; opioids use disorder, severe, in substantial remission; barbiturates use disorder, severe, in substantial remission; unspecified personality disorder with borderline and avoidant features; unspecified anxiety disorder, moderate; rule out

ORDER - 19

PTSD; rule out anxiolytic use disorder; and somatic symptom disorder features, rule out disorder.  Tr. 1135. Dr. Arnold opined Plaintiff has no to mild limitation in her ability to understand, remember, and persist in tasks by following very short and simple instructions, make simple-work related decisions, and ask simple questions or request assistance; moderate limitations in her ability to learn new tasks, perform routine tasks without special supervision, be aware of normal hazards and take appropriate precautions, and set realistic goals and plan independently; marked limitations in her ability to understand, remember, and persist in tasks by following detailed instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, adapt to changes in a routine work setting, and, communicate and perform effectively in a work setting, and maintain appropriate behavior in a work setting; and severe limitation in her ability to complete a normal workday/workweek without interruptions from psychologically-based symptoms.  Tr. 1135-36.  He opined Plaintiff overall has a marked severity rating, Plaintiff's limitations are not primarily caused by a substance use disorder, and the limitations were expected to last 15 months.  Tr. 1136.  The ALJ found Dr. Arnold's opinion was unpersuasive.  Tr. 714.

First, the ALJ found Dr. Arnold's opinion was not supported by his examination of Plaintiff.  *Id.*  Supportability is one of the most important factors an

ORDER - 20

ALJ must consider when determining how persuasive a medical opinion is.  20

C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more relevant objective evidence

and supporting explanations that support a medical opinion, the more persuasive

the medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The ALJ

found Dr. Arnold's examination showed no deficits on examination, except

Plaintiff recalled only four of the five past five presidents, and she had a moderated

depressed/anxious mood.  Tr. 714.  Dr. Arnold noted Plaintiff's speech was logical

and progressive, she was cooperative and oriented, with normal perception, fund of

knowledge, concentration, abstract thought, and insight and judgment.  Tr. 1137-

38.  Although Plaintiff recalled only four of the five last presidents, she recalled

three out of three objects after a delay.  Tr. 1138.  Plaintiff contends Dr. Arnold's

examination supported his opinion, but Plaintiff does not cite to any portion of Dr.

Arnold's examination that supported his opinion.  ECF No. 8 at 16.  Plaintiff only

cites to Dr. Arnold's diagnoses and observations Plaintiff was moderately

depressed/anxious and missed on item during memory testing.  *Id.*  The ALJ

reasonably found Dr. Arnold's opinion that Plaintiff has multiple marked

limitations was inconsistent with his normal examination.

Second, the ALJ found Dr. Arnold's opinion was inconsistent with the

medical evidence.  Tr. 714.  Consistency is one of the most important factors an

ALJ must consider when determining how persuasive a medical opinion is.  20

ORDER - 21

C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more consistent an opinion is

with the evidence from other sources, the more persuasive the opinion is.  20

C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  Plaintiff again offers an alternative

interpretation of the evidence.  ECF No. 8 at 16-17.  However, the ALJ's

interpretation of the evidence is reasonable and supported by substantial evidence,

as discussed *supra*.  The ALJ reasonably rejected Dr. Arnold's opinion.

### 4.  Mr. Daily

On October 15, 2019, Mr. Daily, a treating counselor, rendered an opinion

on Plaintiff's functioning.  Tr. 503-06.  Mr. Daly opined Plaintiff has moderate

limitations in her ability to remember locations and work-like procedures,

understand and remember very short and simple instructions, carry out very short

and simple instructions, perform activities within a schedule, maintain regular

attendance and be punctual within customary tolerances, make simple work-related

decisions, complete a normal workday/workweek without interruptions from

psychologically-based symptoms and perform at a consistent pace without an

unreasonable number and length of rest periods, interact appropriately with the

general public, ask simple questions or request assistance, get along with

coworkers or peers without distracting them or exhibiting behavioral extremes,

maintain socially appropriate behavior and adhere to basic standards of

neatness/cleanliness, be aware of normal hazards and take appropriate precautions,

and set realistic goals or make plans independently of others; marked limitations in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting; and severe limitation in her ability to travel in unfamiliar places or use public transportation. Tr. 503-04. As to the B Criteria, he opined Plaintiff has a mild limitation in her ability to understand, remember, or apply information, moderate limitation in her ability to concentrate, persist, or maintain pace, and marked limitation in her ability to interact with others and adapt or manage oneself. Tr. 505. He further opined Plaintiff meets the C criteria, she would be off task 21 to 30 percent of the time and would miss four or more days per month if she worked full-time; and she has limitations in her abilities to sustain work due to PTSD, her symptoms affect her ability to react appropriately to normal stressful situations, her symptoms affect her memory, concentration, and ability to focus, and her symptoms are severe enough to prevent her from sustaining gainful employment. Tr. 506. The ALJ found Mr. Daily's opinion was unpersuasive. Tr. 712.

ORDER - 23

1    First, the ALJ found Mr. Daily's opinion was not supported by his own

2    treatment records.  *Id.* Supportability is one of the most important factors an ALJ

3    must consider when determining how persuasive a medical opinion is.  20 C.F.R.

4    §§ 404.1520c(b)(2), 416.920c(b)(2).  The more relevant objective evidence and

5    supporting explanations that support a medical opinion, the more persuasive the

6    medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The ALJ found

7    Dr. Daily's opinion was inconsistent with his treatment records, which document

8    Plaintiff being alert, engaged, and attentive, with generally normal abilities to

9    understand remember, apply, interact, concentrate, persist, and keep up.  Tr. 712

10   (citing Tr. 525-26, 533-40, 558-59, 569, 571, 575, 587).  Plaintiff was also

11   documented as engaging in meaningful dialogue, providing appropriate feedback

12   to others, and demonstrating insight into her past behaviors.  Tr. 526, 533-40, 569,

13   571, 575.  Plaintiff contends Mr. Daily's treatment records support his opinion.

14   ECF No. 8 at 17-18 (citing Tr. 507-698, 1086-1142, 1530-59, 1671-1821).

15   Plaintiff cites to over 400 pages of medical records, without any specific analysis

16   of how the medical records support Mr. Daily's opinion.  Plaintiff contends her

17   earlier analysis supports her allegation the medical records support Mr. Daily's

18   opinion; however, as discussed *supra*, Plaintiff's earlier analysis of the opinions

19   largely relies on her own self-reported symptoms and do not contain significant

20   objective evidence of disabling limitations.

ORDER - 24

Plaintiff also contends Mr. Daily's opinion constituted the findings of a treatment team, with at least one M.D. or Ph.D. on the team. ECF No. 8 at 17. This is an inaccurate representation of Mr. Daily's statement. Mr. Daily wrote the opinion is from a treatment team but stated there was not an M.D. nor Ph.D. on the treatment team. Tr. 506. The ALJ reasonably found Mr. Daily's opinion was not supported by his treatment records.

Second, the ALJ found Mr. Daily's opinion was inconsistent with the medical records. Tr. 712-13. Consistency is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ found Mr. Daily's opinion was inconsistent with the records as a whole, which documented Plaintiff having generally normal orientation, memory, fund of knowledge, speech, mentation, cooperation, behavior, thoughts, and insight/judgment. Tr. 712-13. Plaintiff was noted as able to understand, remember, apply, interact, concentrate, and keep up, and she was alert, engaged, and attentive. *Id.* The ALJ reasonably found Mr. Daily's opinion was inconsistent with the medical records as a whole.

Third, the ALJ found a portion of Mr. Daily's opinion addressed an issue reserved to the Commissioner. Tr. 713. For claims filed on or after March 27,

ORDER - 25

2017, the ALJ is not required to provide any written analysis about how they

consider issues reserved to the Commissioner.  20 CFR 20 CFR §§ 404.1520b(c),

416.920b(c).  Plaintiff again does not challenge this reason, thus any challenge is

waived.  *See Carmickle*, 533 F.3d at 1161 n.2.  Further, the ALJ's consideration of

the issue is supported by the regulations and therefore was not erroneous.  Plaintiff

is not entitled to remand on these grounds.

**B. Step Three**

Plaintiff contends the ALJ erred at step three by failing to find Plaintiff

meets or equals Listings 12.03, 12.04, 12.06, and 12.15.  ECF No. 8 at 18-19.  At

step three, the ALJ must determine if a claimant's impairments meet or equal a

listed impairment.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The Listing of Impairments "describes for each of the major body systems

impairments [which are considered] severe enough to prevent an individual from

doing any gainful activity, regardless of his or her age, education or work

experience."  20 C.F.R. §§ 404.1525, 416.925.  "Listed impairments are

purposefully set at a high level of severity because 'the listings were designed to

operate as a presumption of disability that makes further inquiry unnecessary.'"

*Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*,

493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because

they automatically end the five-step inquiry, before residual functional capacity is

1   even considered." *Kennedy,* 738 F.3d at 1176.  If a claimant meets the listed

2   criteria for disability, she will be found to be disabled.  20 C.F.R. §§

3   404.1520(a)(4)(iii), 416.920(a)(4)(iii).

4         "To *meet* a listed impairment, a claimant must establish that he or she meets

5   each characteristic of a listed impairment relevant to his or her claim."  *Tackett,*

6   180 F.3d at 1099 (emphasis in original); 20 C.F.R. §§ 404.1525(d), 416.925(d).

7   "To *equal* a listed impairment, a claimant must establish symptoms, signs and

8   laboratory findings 'at least equal in severity and duration' to the characteristics of

9   a relevant listed impairment . . . ."  *Tackett*, 180 F.3d at 1099 (emphasis in original)

10  (quoting 20 C.F.R. § 404.1526(a)).  "If a claimant suffers from multiple

11  impairments and none of them individually meets or equals a listed impairment,

12  the collective symptoms, signs and laboratory findings of all of the claimant's

13  impairments will be evaluated to determine whether they meet or equal the

14  characteristics of any relevant listed impairment."  *Id*.  However, "'[m]edical

15  equivalence must be based on medical findings," and "[a] generalized assertion of

16  functional problems is not enough to establish disability at step three.'"  *Id*. at 1100

17  (quoting 20 C.F.R. § 404.1526(a)).

18        The claimant bears the burden of establishing her impairment (or

19  combination of impairments) meets or equals the criteria of a listed impairment.

20  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "An adjudicator's

ORDER - 27

articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found that Plaintiff's impairments and combinations of impairments did not meet or equal any listings, including Listings 12.03, 12.04, and 12.15. Tr. 706. The ALJ did not address Listing 12.06, however the ALJ did not find Plaintiff had a severe anxiety disorder; Plaintiff does not contend the ALJ erred at step two in failing to find a severe anxiety disorder. Tr. 705. It is thus unclear how Plaintiff contends she meets or equals Listing 12.06, a listing which addresses anxiety and obsessive-compulsive disorders. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.06.

Plaintiff does not set forth any analysis as to how she meets or equals Listings 12.03, 12.04, or 12.15. She does not cite to any evidence in support of her contention she meets or equals a listing. As such, Plaintiff has not met her burden in demonstrating the ALJ erred at step three. *See Tackett*, 180 F.3d at 1100. While Plaintiff contends the ALJ erred in failing to ask the medical expert about the C Criteria, Plaintiff does not present any evidence she meets the C Criteria. As such,

1    the ALJ did not err at step three.  Plaintiff is not entitled to remand on these

2    grounds.

3    **C. Plaintiff's Symptom Claims**

4    　　　Plaintiff faults the ALJ for failing to rely on reasons that were clear and

5    convincing in discrediting her symptom claims.  ECF No. 8 at 19-20.  An ALJ

6    engages in a two-step analysis to determine whether to discount a claimant's

7    testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.

8    "First, the ALJ must determine whether there is objective medical evidence of an

9    underlying impairment which could reasonably be expected to produce the pain or

10   other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

11   "The claimant is not required to show that [the claimant's] impairment could

12   reasonably be expected to cause the severity of the symptom [the claimant] has

13   alleged; [the claimant] need only show that it could reasonably have caused some

14   degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

15   　　　Second, "[i]f the claimant meets the first test and there is no evidence of

16   malingering, the ALJ can only reject the claimant's testimony about the severity of

17   the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

18   rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

19   omitted).  General findings are insufficient; rather, the ALJ must identify what

20   symptom claims are being discounted and what evidence undermines these claims.

ORDER - 29

*Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 709-10.

1. *Inconsistent Medical Evidence*

The ALJ found Plaintiff's allegations were inconsistent with the objective medical evidence.  Tr. 710-11.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  Mental status examinations are objective measures of an individual's mental health.  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

While Plaintiff alleges she experienced disabling limitations during the relevant period, the ALJ found the objective medical evidence did not support her allegations.  Tr. 709-10.  As discussed *supra*, while the medical records document

1  some abnormalities on examination, they also document normal orientation,

2  thoughts, memory, fund of knowledge, abstract thought, eye contact, affect,

3  behavior, concentration, focus, insight, and judgment.  Tr. 710-11.  Plaintiff scored

4  a 27 out of 30 on a mini-mental status examination.  *Id.* (citing Tr. 310).  Plaintiff

5  was documented as personable, reporting a good appetite, and having GAD-7

6  scores as low as 3 and PHQ-9 scores as low as 0, which Dr. Lace testified were

7  indicative of asymptomatic conditions.  Tr. 710.  As discussed *supra*, records also

8  document Plaintiff as able to interact and participate appropriately during group

9  sessions.  The ALJ reasonably found Plaintiff's allegations were inconsistent with

10  the objective evidence.  This was a clear and convincing reason, along with the

11  other reason offered, to reject Plaintiff's symptom claims.

12      *2. Conservative Treatment*

13      The ALJ found Plaintiff's allegations were inconsistent with her

14  conservative treatment.  Tr. 711.  Evidence of "conservative treatment" is

15  sufficient to discount a claimant's testimony regarding the severity of an

16  impairment.  *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) (citing *Johnson v.*

17  *Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).  The ALJ found Plaintiff had only

18  conservative treatment for her mental health symptoms.  Tr. 711.  Plaintiff had

19  medication therapy and counseling, which Plaintiff contends is not conservative.

20  ECF No. 8 at 12.  Plaintiff cites to *Shelley C.*, a Fourth Circuit case, contending the

ORDER - 32

1    court in *Shelley C.* stated mental health counseling and medication management is

2    "anything but conservative."  *Id.* (citing *Shelley C. v. Comm'r of Soc. Sec. Admin.*,

3    61 F.4th 341, 355 (4th Cir. 2023)).  However, Plaintiff has presented the quote out

4    of context.  In *Shelley C.*, the plaintiff was hospitalized after an intentional

5    overdose, and she then had a more rigorous treatment program, with more frequent

6    visits and medication management; when that plan was insufficient, a doctor

7    suggested TMS therapy or ECT therapy, treatments that are described as being

8    offered only to patients with the "most severe, resistant cases of depression."

9    *Shelley C.*, 61 F.4th at 355.  The plaintiff had 36 rounds of TMS therapy, with

10   short-lived results, and the doctor suggested a second round of TMS or more

11   aggressive ECT treatment.  *Id.*

12        The instant case is distinguishable from *Shelley C.*  Plaintiff here did not

13   have any hospitalizations, inpatient mental health treatment nor suicide attempts

14   during the relevant adjudicative period.  Tr. 711.  Plaintiff does not cite to any

15   evidence she had emergency department visits for her mental health symptoms or

16   required increased treatment such as increased medications or a more aggressive

17   form of treatment for her mental health symptoms.  As such, the ALJ reasonably

18   found Plaintiff's conservative treatment was inconsistent with her allegations of

19   disabling symptoms.  This was a clear and convincing reason, supported by

20

substantial evidence, to reject Plaintiff's symptom claims.  Plaintiff is not entitled

to remand on these grounds.

**D. Step Five**

Plaintiff contends the ALJ erred at step five by relying on vocational expert

testimony that was based on an incomplete hypothetical.  ECF No. 8 at 21.

However, Plaintiff's argument is based entirely on the assumption that the ALJ

erred in considering the medical opinion evidence and Plaintiff's symptom claims.

*Id.*  For reasons discussed throughout this decision, the ALJ's consideration of

Plaintiff's symptom claims, and the medical opinion evidence are legally sufficient

and supported by substantial evidence.  Thus, the ALJ did not err in finding

Plaintiff capable of performing other work in the national economy based on the

hypothetical containing Plaintiff's RFC.  Plaintiff is not entitled to remand on these

grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

1.  The District Court Executive is directed to substitute Martin O'Malley

as Defendant and update the docket sheet.

2.  Plaintiff's Brief, **ECF No. 8**, is **DENIED**.

ORDER - 34

3. Defendant's Brief, **ECF No. 12**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED December 27, 2023.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 35